**Jarvis K. MITCHELL, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–73–446.**

Court of Criminal Appeals of Oklahoma.

June 6, 1974.

Leslie 'R. Earl, Chief Public Defender, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., James C. Peck, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court, Tulsa County, Case No. CRF–73–716, appellant Jarvis K. Mitchell, hereinafter referred to as defendant, was charged and after waiving bifurcated proceedings and stipulating to former convictions, was tried and convicted for the offense of Obtaining a Controlled Dangerous Drug by Forged Prescription After Former Conviction of a Felony. His punishment was fixed at a term of ten (10) years imprisonment. From said judgment and sentence he has perfected his timely appeal to this Court.

The evidence adduced at trial from the testimony of Kosin Pholphayahukire, a registered pharmacist at Ward Drug Store No. 106, 1130 South Memorial Drive, Tulsa, Oklahoma, revealed that on April 12, 1973, at approximately 1:15 p. m. defendant presented at the prescription counter, State's exhibit No. 1, a prescription for 50 four milligram tablets of Dilaudid (Hydromorphinone). Kosin Pholphayahukire phoned the doctor listed on the prescription, the doctor was not in the office, and therefore he filled the prescription as the defendant had previously presented a bonafide prescription for the same drug. Kosin further testified he later learned the prescription was not a bonafide prescription and pursuant to a phone call made by a companion pharmacist, the authorities were contacted.

Counsel stipulated to the chain of custody and the fact that if the physician were called to testify he would testify the signature on the prescription was not his signature.

Thereafter the State rested.

Defendant testified that he was a cancer patient and on medical leave from the Oklahoma State Penitentiary because of this illness. He previously had undergone

surgery and following the operation, the doctor's prognosis was that the illness was terminal and it was estimated that he had a 20% chance of living two years. Defendant stated specifically that on April 12, he awoke early in the morning suffering from severe pain. He made an appointment with a Dr. F. R. Northrop and at his appointment he requested the doctor prescribe the above narcotic. Dr. Northrop instructed him he could not prescribe the medication without proper medical records from the hospital where the surgery was performed. Dr. Northrop instructed him to contact the hospital and have the medical records sent to him and at the conclusion of the appointment the doctor gave defendant a slip with his telephone number written on it. Defendant testified he telephoned the hospital and requested that they transmit to Dr. Northrop the records of his illness. Defendant later attempted to recall Dr. Northrop but was unable to make contact with him. Thereafter, he attempted to make contact with a Dr. Schnetzer who had previously prescribed the drug for him. He was unable to get in touch with Dr. Schnetzer and consequently, being in severe pain, he forged a prescription on the slip on which Dr. Northrop had written his telephone number. On both direct and cross-examination defendant admitted he forged State's exhibit No. 1, the prescription in question.

On rebuttal Kosin Pholphayahukire testified identifying State's exhibit No. 2, a valid prescription for Dilaudid that defendant had presented to him on April 8, 1973. He testified that an address, 803½ South Evanston, on the prescription had been written by defendant at Mr. Pholphayahukire's request at the time the description was filled. This address differed from the address on State's exhibit No. 1.

Defense counsel submits two propositions of error. These propositions suggest this Court should reverse defendant's conviction for the reason improper questions propounded by the prosecutor during the course of trial and improper comments during closing arguments implied the defendant was "pushing" the narcotics he was obtaining under prescription and the bogus prescription. At page 50 of the trial transcript the following question was found:

"Q (By Mr. Thompson) How much do you pay for these tabs?

"A Four fifty to about six dollars and something, seven dollars.

"Q Can you then take them and sell them on the street?

MR. MESSLER: Your Honor, I am going to object to that. (Tr 50)

THE COURT: That is argumentative, counsel. I will sustain the objection and admonish the jury to disregard it." (Tr 51)

During closing arguments the following comments are found:

"There is good reason why the legislature of the State of Oklahoma—and this is a uniform law, it's uniform throughout the United States as to why this particular drug and its derivatives and everything is controlled, because of its high potential for abuse. This is why the law restricts that doctors prescribing this type of drugs have to be registered, they have to have a registration number on those prescriptions because the State and government, the people responsible for controlling drugs have tried to keep those drugs by way of registration, registering the prescriptions, keeping close contact and close records on the dispensing of these type drugs and everything so that they don't fall into the hands of irresponsible people or don't *fall into the hands of pushers on the street* and this is why all of the precautions are taken with regard to these type of prescriptions. Sure, in specific instances they are lawfully given for severe pain and they are prescribed in those particular instances for people who have severe pain based upon their medical history, but it is not to be abused.

And it can be abused, believe me, it can be abused.

"Now, you told me, each of you assured me that you would not use sentiment or sympathy. If you are inclined to do so in this case because of severe pain, he said he broke the law, and he committed this act; now, if you follow that line of reasoning what if the next time or another person not only was in severe pain but didn't have the money to buy them, would that, because of sentiment or sympathy, allow him to use a gun to get the money to forge the prescription to get the drugs?" (Tr 63)

Further at page 71 of the transcript, the following comment is made:

"Again those inferences which I talked to you about, why this particular drug is controlled, how easily it can be abused in dispensing and getting into the hands of irresponsible people. Nobody got hurt. I don't know whether anybody got hurt or not. Ninety tabs of Dilaudid in a span of four days, I don't know whether anybody got hurt."

The prosecutor's arguments coupled with the improper questions above quoted do imply the defendant is a drug pusher. There is no evidence within the record to support such comments and created inferences and in light of the offense alleged, it is our opinion they are grounds for reversal in a close case or modification of a sentence in a case where guilt is overwhelmingly established by the evidence.

The instant case presents a unique setting, however. The defendant candidly admitted forging the prescription, State's exhibit No. 1 (Tr 39). There is no conjecture regarding the basis for the jury's verdict of guilt being predicated upon the evidence considering the admission. Consequently in the instant case, the improper comments stand only as ground for modification as defendant's admission would take it out of the realm of requiring reversal. The jury imposed the minimal penalty provided by law. We have held previously this Court has no authority to modify a sentence below the statutory minimum. See Lauen v. State, Okl.Cr., 515 P.2d 578 (1973). Therefore, we find after considering the evidence in the entire record the judgment and sentence should be affirmed.

BRETT and BUSSEY, JJ., concur.